21-10486 Corbitt v. Alabama Council for appellant you may begin when you're ready. Judge Pryor and may it please the court, Edmund LaCour on behalf of the appellants. For decades, Alabama has generally defined sex on its driver's licenses the same way it defines sex on its birth certificates. That is, basing sex on biological differences between males and females that are observable at birth. This is and has long been the baseline rule in the state for our driver's licenses. Policy Order 63 codifies a narrow exception to that baseline rule. And to the extent that plans challenge that particular accommodation, we don't believe they have standing to do so because that narrow accommodation does not harm them. Just take for example, if Policy Order 63 had never been enacted, plans would be no closer to achieving what they want in this case, which is a driver's license with their preferred sex designation upon it. But to the extent that they have challenged the baseline rule, this equal protection challenge still warrants only rational basis scrutiny from this court for at least two reasons. First, this is not a typical equal protection challenge. And I'll explain what that means. In most equal protection challenges, you have a plaintiff who is seeking a sex-neutral rule in its place. Think the VMI case. The plaintiffs there did not ask for a different definition of sex to be applied by the state of Virginia. Instead, they asked that sex be removed as any classification when it came to who was going to be admitted into the college. Such claims, like the one plaintiffs are bringing here though, do not challenge the state's decision to use sex at all or place sex on a license. Rather, they attack the definition as being perhaps too narrow. That our definition of female should be broadened to encompass the three plaintiffs in this case at least, and perhaps many more people. They don't really lay out exactly what their rule would be or what Alabama should follow in place of the policies that we've long followed in the state. And so we think this is fundamentally an under-inclusiveness challenge like the one at issue in the Janirak case that we discussed in both our opening and reply briefs. As you will recall, the Second Circuit was dealing with Rocco Lugiere's challenge to New York's Affirmative Action Program there. Mr. Lugiere was of Spanish descent. His mother was from Spain, and he argued that he, too, should be considered Hispanic under New York's definition of Hispanic for purposes of accessing their minority opportunity program for government contractors. New York defined Hispanic, however, to only mean people with Latin American roots. And when the Second Circuit decided how that challenged the definition of Hispanic should be assessed, they applied rational basis. The court explained if Mr. Lugiere was challenging the decision altogether as to whether or not race should be used as a classification, then strict scrutiny would apply. But that was not the challenge. His challenge was—his problem with the program was not that race was being used at all. His problem was that it was being defined too narrowly. It was an under-inclusiveness challenge. He offered evidence that he, too, had been subject to discrimination or that Spanish—people of Spanish origin had been subject to discrimination. The court said, no, that it's under-inclusiveness that gets rational basis. When government acts, it does not need to deal with every single harm in one fell swoop. It can work incrementally. And I think that maps on perfectly to what we have here. Policy Order 63 is an accommodation. It works incrementally. It does allow some people to change their sex. But the fact that it does not allow more people to change their sex does not mean that intermediate scrutiny would apply in this instance. It only allows transgender people to change their sex under the policy, right? The policy states if someone has had, I believe, gender transition surgery, it does not inquire into why that person has had that surgery. And we make the point in our brief that if someone has had a gender transition surgery and gone from, for example, male to female, and then later decides that they would like to go back from female to male, they, too, under the plain text of Policy Order 63, would need to comply with that. So it does not say transgender on the face of the statute. And that is... But the only people who would be having surgical modification surgery would be transgender people. Do you disagree with that? I do take issue with that. I think it's most likely that it would be someone who is transgender, but I don't think that's necessarily going to be the case. And even if it were, Your Honor, recall the Godoldig decision from the United States Supreme Court. That was the case involving California's workers' comp statute, which provided benefits to workers who were out of work for various medical reasons, but expressly excluded pregnancy. And there were a group of women who challenged that as an equal protection violation. And the Supreme Court said, well, even though women are the only people who are going to become pregnant, this is not a discrimination based on sex. And we think the same analysis applies in this instance. You mentioned transitioning back surgically. Is there any evidence in the record that that has ever happened? I don't believe there's evidence that that has happened under Policy Order 63. We do have testimony from Don Leach in the record who talks about someone he's familiar with who called them about, I guess, a biological male that transitioned to female and then transitioned back to male and had been stopped, I believe, in Minneapolis by police there. So there is evidence that this does indeed happen. But in any event, on the face of the provision, it does not treat transgender or cisgender people differently. Even if transgender people were the only people who ever took advantage of Policy Order 63, under cases like Bray, Doldig, and others dealing with pregnancy, for example, those pregnancy-specific regulations still do not create a sex-based discrimination. And I think for similar reasons, rational basis still applies because this particular scheme applies equally to men and women, to transgender and cisgender persons, for the reasons I was explaining. But even if we were subject to intermediate scrutiny, I think Alabama clearly passes that. These are law enforcement identification documents. That is why they have identifying information on them, including date of birth, height, weight, hair color, eye color, someone's signature, and someone's sex. Each piece of information, in the aggregate, for the millions of people who carry an Alabama license, on the whole, having more of that information on there is going to make the identification document more useful than if that information were not there. But counsel... Go ahead. Go ahead. Go ahead, Judge Barnes. Didn't Judge Thompson implicitly, if not explicitly, find that that was not the motivation? If there was no evidence, the state had interpreted the, at best, or maybe at worst, ambiguous testimony of the 30B6 witness as not establishing that. Well, Your Honor, I think that gets back to something I was touching on at the beginning about the baseline versus the accommodation. So, one, I do think he was clearly erroneous in how he assessed Chief Pregnant's testimony. If you look at Doc 48-5, running from pages 38 to pages 90 of the transcript, you will see again and again her laying out different reasons and different interests advanced by the person who snippets that testimony to really misconstrue it as a whole, and I do think that is clearly erroneous. But there's a more fundamental legal error, too, that affected that analysis, and that is he was asking, well, what was the reason why you ultimately codified this practice that has been around since at least the 2000s of allowing persons who want to change their sex to do so if they've had sex change surgery? And they said, well, we wanted to be more consistent, so we decided we would put this into writing. We wanted to be consistent with the birth certificate approach, too, so we decided to put this in writing. But that totally ignores the purposes of the baseline rule, and I think everyone in this case agrees that the purpose of putting sex on a state identification document is to make it easier to identify people, and that was totally written off by the court. I'm a little puzzled by that argument, because if a person's driver's license reflects, let's How would that help law enforcement to identify that person? Well, Your Honor, I think not every single piece of information is going to be equally helpful for every single person. If someone has lost a lot of weight in between the time they visited the ALEA and the time they get pulled over, weight's not going to be as useful for them. That doesn't mean it's not going to be useful in the aggregate for the millions of people who carry a license, and that's the same sort of analysis that would apply to sex. And Plain and Stone evidence suggests that maybe 0.3% of the population is transgender, so that means 99.7% of the time, this is going to be useful information. And as the Supreme Court in the West... But don't we have to look at whether it's useful information with respect to this specific policy? In other words, for the people affected by the policy, it is pertinent information, but it seems incorrect. Well, if you're narrowing the look just down to the policy, I think it is still... The policy is still useful because the people who've had the sex change surgery have indicated that they've made some sort of permanent or at least near-permanent transition to a different sex, and it will be useful information to know how they present before they are searched by a law enforcement officer, before they are booked into a prison. But I do think the proper analysis is really the millions of licenses, not the... Supplemental appendix. They get about 10 to 15 of these requests a year, so this is a very small group of people. And I think the proper scope of analysis, if you look at a case like Wen from the Supreme Court, is the aggregate. It is everyone who is affected by the policy of having sex on a license at all, not this very small group who is affected by this particular accommodation. And, Judge Carnes, to return to your point, I think if you look at a different accommodation context, RLUIPA, when we give our briefs, generally if you're in a male prison, you have to be clean-shaven for safety purposes. RLUIPA requires, in some instances, that a devout Muslim be allowed to grow a beard. That's an accommodation. And to ask, well, how does allowing a Muslim to grow a beard advance your security purposes, is asking exactly the wrong question. You have to look at the baseline. And we do think Policy Order 63 does advance some of those interests, and it's narrowly tailored for that reason, so it doesn't depart too far from the baseline. But the proper analysis in terms of what the interests being advanced, or whether the interests are being sufficiently advanced, is the baseline rule. Now, there are three other arguments that I think we addressed well in our briefs. I'm happy to take any questions. Well, I would like you to talk about the plaintiff's First Amendment claim that this is compelled speech before you sit down. Yes. Two points on that, Your Honor. One, I don't think this is expressive activity. If you're pulled over on the way home from court today, and the officer says, present your license and your registration, I don't think that's expressive First Amendment activity. You're merely communicating a fact about, that the government has about you in a database to another state official. But second, I think the Fairview-Rumsfeld case, which we discussed extensively in our opening brief, and which is cited not once in the response brief from the plaintiffs here, also forecloses the First Amendment challenge. That was a case where the federal government was requiring law schools to send out emails and post flyers, potentially, on behalf of employers. Yeah, but in that case, the Supreme Court ultimately determined that there was no speech at all. It was just conduct that was being regulated, right? So that's different. Well, there was conduct being regulated, but the conduct clearly implicated speech, including blasting out emails, which I think looks a lot more like speech than showing your license to a law enforcement official. But any speech was incidental to the conduct, and here the relevant conduct is, when you're driving your car, carry your license. When you're pulled over, show your license to a state official. The fact that some people might believe that to be expressive in some way, shape, or form, does not mean it's not conduct that's being regulated, that speech is merely incidental. For those reasons, we think Fairview-Rumsfeld also controls. Let me ask you a question about a statement in your brief at page 35. You say, the state interest in requiring, sorry, I can't read my own writing, requiring a person to carry identification presupposes an important state interest in having that identification reflect the state's view of who that person is. That sounds like an ideological message to me. Why isn't it? And how is it different from our McClendon case involving the signs on the yard of sex offenders? Your Honor, I don't think we are trying to communicate something about some deep inner personhood. We are reflecting the biological sex that we put down in our database and that we put onto the license. And the fact that there might be a different gender identity that the plaintiffs would want to communicate, they have ample opportunity to do that in other ways, which also brings this case within the Fairview-Rumsfeld case. One way to deal with speech that someone doesn't like is to disassociate yourself with it or to match it with additional speech, which I believe the plaintiffs all do in this case. All right. We'll set that case aside because let's say I disagree with you on that. Can you answer my question without referring to that case? Your Honor, I don't think the state is trying to communicate any message. We are trying to simply have relevant data on an identification document. And the fact that we have to use words to do it doesn't mean that this is expressive activity. And in fact, the Alabama Code 3269A only requires the disclosure of the driver's license to a judge, a peace officer, and a state trooper. So in fact, the appellees in this case don't have to use a driver's license in any other circumstance. A passport would be acceptable. And I think under the facts of this case, the passports were not an issue because I think the passports for these plaintiffs reflected the gender identity that they preferred, correct? That's correct, Your Honor. Two of the three plaintiffs have passports that reflect a female gender identity. The third plaintiff, at the time of the deposition, was unaware that that was an option and then stated that the plaintiff had the ability to obtain a passport. And I do not know if the plaintiff followed through with that or not, but it's certainly an option. Didn't the district court find, though, that there were many instances in everyday life where the plaintiffs would be required to show a driver's license, even if not required by law? It might be so, but that doesn't mean the government is forcing them to do that. If we were to disagree with the district court, I'm assuming you would be asking us to resolve the other issues raised by plaintiff rather than remand. Is that correct? Yes, we would ask you to reverse and render. There really are not many factual disputes anymore. It's really just how the evidence is construed. That's why we had a trial in the papers, essentially. It's really no different than having a final judgment and the fact that the court only addressed one of the issues would not preclude this court from resolving all of them. And if the court were to agree that the plaintiffs have really challenged the wrong thing by challenging only the accommodation rather than the baseline rule, that would be a simple way to get rid of all the claims at once. And I'm sure you know that we have recently taken the Adams v. School Board case on Bonk. Should we, or would you foresee that we might need to wait for that opinion to come out? I think the court can control its docket, however it sees fit. We do think that the Adams case suffers a similar problem in terms of really not challenging the decision to have sex-based classifications at all when it comes to bathrooms, so that indeed, Adams states, no one contests that boys should use the boys' bathroom, girls should use the girls' bathroom. Again, the problem there was definitional. And we do think when you have a clash of definitions, you have an under-inclusiveness challenge rational basis to what applies to that instance. Thank you, Mr. LaCour. Thank you. The court has taken you well over your time, but we will afford you your three minutes for rebuttal. Excellent. Thank you. Mr. Arkels? May it please the court, Gabrielle Arkels for Plaintiff at Palais. One of my clients, Destiny Clark, is here with us in court today. Alabama is currently one of only four states in the nation to require its transgender residents to undergo surgery as a condition of getting a license that they can safely use. That is, a license with a sex designation that accords with their identity and how they are known and perceived in their communities. The district court's opinion should be affirmed because when the state denied the plaintiffs' applications to change the sex designations on their licenses, telling them that they must identify themselves as men on those documents unless and until they underwent genital gender reassignment surgery, the state relied on sex. The state's attempt to characterize its sex-based policy as a classification or accommodation does not insulate it from heightened scrutiny. Particularly where it's here, the district court found that the plaintiffs had suffered direct, concrete, and severe injury as a result of that action. The Supreme Court could not have been clearer on this point. Today, all gender-based classifications are subject to heightened scrutiny. Counsel, is it true if there's no discrimination, if the classification doesn't carry with it or isn't motivated by or doesn't result in one sex getting an advantage or a detriment that the other sex doesn't get? Your Honor, any time that there is a state action that relies on sex and there is Article 3 injury, then yes, this is subject to heightened scrutiny. Okay, but you've gone circle with me. If there's Article 3 injury, then one sex is deprived of a benefit that the other sex is getting or is suffering a detriment that the other sex does not suffer, correct? Not necessarily as a group, but at least an individual has to be in some way injured because of sex. So, if there's no benefit conveyed to females as a class or to males as a class or no detriment, if a single person suffers a detriment or doesn't get a benefit that a single person in the other class gets, you're saying that violates equal protection? Absolutely, Your Honor, so long as that determination was made based on sex. I think that's J.E.B. where the court said, you know, if there's a single situation where a juror was struck because of their sex that infects the judicial process, it doesn't matter if we'd end up with the same jurors with the same sex, it doesn't matter if the outcome of the case would be the same. A single decision to strike a juror because they're a man constitutes a sex-based classification and is subject to heightened scrutiny. Even in Frontiero itself, by definition, because there was no same-sex marriage at the time, there was always a woman and a man who was advantaged by the rule, and there was always a woman and a man who was disadvantaged by the rule, because it was a rule about whether service members could provide for their well-being. Well, the class of women generally were disadvantaged, and the class of men generally were advantaged. I don't think so, Your Honor, because, I mean, all of the wives of male service members were in fact advantaged. All of the husbands of the female service members were disadvantaged. You're right, I flipped that, but as a class, the class was disadvantaged. Well, but the service members, if you look at the service members instead of the spouses, then it's the other way around. It comes out to even numbers. There doesn't have to be, overall, that one class is favored or disfavored, so long as there's a decision that's based on sex that's hurting someone. So one person out of 330 million is enough to violate equal protection? Sure, I mean, that was this Court's decision in Glenview Brumby, that somebody was terminated because she was a transgender woman who did not match sex stereotypes. That violates equal protection. It doesn't matter whether women and men as a class are helped or hurt, the government made the decision based on sex. But there was an intent, there was an intent in that and other cases to discriminate, and that's true of J.B. too. There was an intent to discriminate. If Alabama has a facially neutral rule and you can't show that it was adopted and there's no finding it was adopted with an intent to discriminate, then you don't have a pattern that fits in those other cases. The intent that's required is an intent to act based on sex. I mean, if we look at Craig v. Boren, the intent there was to protect young men from drunk driving accidents, which they were more prone to. It doesn't have to be an intent to harm. It simply has to be an intent to treat someone differently because of sex in a way that harms them. But how is this treating somebody different than sex? It is merely saying, under Alabama driver's license policy, we are going to classify you based on sex, but there's no different treatment accorded to the sexes based on this policy. That is different treatment, saying we're going to determine the content of your license, which you are going to be obligated to carry and show, is going to be based on our definition of sex, which requires you to undergo a form of surgery that you may not want or need, that you may not be able to afford, that has nothing to do with your ability to drive. There is no requirement that anybody has to undergo surgery. Policy 63 was adopted to give an accommodation, to be beneficial, to provide a path. It is not requiring surgery. There is no evidence about any sort of a baseline rule. That is an argument that has been invented on appeal. Nothing in the record indicates such a baseline rule. So if there's no baseline rule, all Alabama has to do is say, fine, we understand, we'll abide by the impact of that, and we'll just rescind Policy 63. If they then... You can't change it. Well, it's out. If they substituted it with a policy that said, no, transgender people can never update the sex on their license... No, no, no, no, no, no, no, you misunderstand me. The rule without 63 is simply no one can change it. The actual baseline rule is that anyone can update descriptive information on their license by self-disclosure. That is the rule for weight, for height, for hair color. You're telling me that Alabama has allowed people to change from male to female and female to male in the past, the baseline rule before 63 was adopted. I'm saying that there is no evidence in the record about what the baseline rule was because the 30B6 witness disclaimed any ability to testify about anything prior to 2012. We have no knowledge about that. So you can't show that there was any discrimination or any different treatment before Policy 63 was adopted, the state says, as an accommodation. But before Policy 63, you have no evidence of any differentiating treatment of transsexuals. There's no evidence either way. That's right, Your Honor. We don't know what they do. But all we need to show is that Policy Order 63 is treating our clients differently based on their sex and it does not... But you haven't shown that people, that they're treated differently as to sex because you haven't shown that anybody else can get more favorable treatment than they've got. You haven't shown that anybody has ever come in and said, I can't explain why. Maybe I'm having voices, hearing voices, or maybe I've taken a women's study program and I really want to be in solidarity with females, but I want to change my sex designation from male to female and the state says, all right, buddy, if that's what you want, we're going to do it. Your Honor... You can't show a single instance in which the state has ever allowed anyone who's not transgender to change from male to female or female to male, can you? Your Honor, it is transgender people who seek to change their sex. I understand that, but you can't show that anybody has ever said there was a mistake. I don't know what my parents would think. They have... Change. The only thing they have said is that for a typographical error, they do allow people to correct it. And for any other form of descriptive information on a license, they allow people to update it based on self-disclosure. In fact, Reverend Corbett, when she went in, was allowed to update her weight and her address. It was only when it came to sex they said, no, you have to get surgery. Surgery doesn't have anything to do with how somebody would identify you. It doesn't have anything to do with your ability to drive, but you have to get it if you want a license that you can actually use. And she didn't get a license at all that day because she would have had to lie to a government official and to God, in her view, to get it. She went without a license because of that. Okay, but I just want to go back. In fact, the policy does not require surgery. The policy has provided an accommodation that says if you want to change it, here is a path. Correct? It's not requiring surgery. It only requires surgery if you want to get a license that you can use. I want to... Before your time expires, I want to talk about your other equal protection theory, which is that the policy is facially discriminatory against transgender individuals, which is discrimination based on gender and sex. How does that theory respond to the accommodation argument? So, Your Honor, saying that we could have done something even worse to transgender people is not a defense. It doesn't mean that it satisfies heightened scrutiny. I think my friend's analogy would be more apt if the government said, all right, we're going to permit people generally in prison to practice their religions, but if you convert to Islam and want to practice your religion, you're going to have to submit evidence of undergoing circumcision as a part of that conversion process. That would clearly be singling out Muslims for worse treatment. And here, saying that transgender people, uniquely transgender people, have to meet an arbitrary surgical requirement in order to get a license that they can actually use out in the world does treat transgender people worse than other people. It is also facially, it applies exclusively to those who seek to change their sex, which is transgender people, and it requires proof of gender reassignment, which is a procedure that only transgender people get, although not all transgender people get. So, we really have clear sex discrimination here because it's facially based on sex, because it's keeping transgender people from getting something that anybody else in the state can get, and because it's treating people who want to change their sex information on their license different from anyone who wants to change any other form of information on their license. Would you explain, going to your First Amendment argument, would you explain why the sex designation on the license is compelled speech? Yes, Your Honor. So here, the sex designation on a license is intended to convey a message about the bearer's gender. When somebody shows their license to another person, a reasonable person would believe that they are expressing, that this reflects who they are, and that the information on it about them is accurate. It is actually pure communication, and the government elsewhere has conceded that it is speech. In fact, this regulates pure speech, and it compels people to endorse it. And in terms of being able to meet strict scrutiny, I mean, it can't even meet heightened scrutiny. The District Court's factual findings there were not clear and can't be disturbed on appeal. There's ample evidence in the record that the one and only reason for imposing this surgery requirement was to have consistency with the state birth certificate procedures, a goal which the District Court found the state hits no more often than it misses, and that at the end of the day, at most, amounts to an occasional reduction in paperwork. That interest cannot suffice under heightened scrutiny or certainly strict scrutiny. You know a problem under your compelled speech, and I understand the District Court not reaching it thinking this was a stronger argument than it had not accepted, is that if you assume people know the law, which we generally do in facial attacks and most of them, people are going to know that all that the M means is that that person had the biological indications of a male at birth. And the state is saying our policy is that's what shows up on the driver's license unless you have reassignment surgery. And so the most you could infer from that is this person had male genitalia at birth and hasn't had reassignment surgery, or if she has, she hasn't gone in and requested a change on the license. That's pretty attenuated speech, don't you think? Well, Your Honor, just on the record, it's clear that it's actually really quite difficult to find out what this policy is. It's not published anywhere. It's certainly not a statute or something where you might presume people are aware of it. And the District Court, of course, didn't reach factual findings on this issue. If there's a question about what reasonable people would perceive, what message this is Let me ask you one other question, and I know you're in the court's time now, but Judge Thompson's order and the judgment, if you read it, does not affect the baseline rule. He doesn't declare the baseline rule unconstitutional. He basically says it is declared that the policy of Alabama Emergency Invalid Order 63, as applied to these three plaintiffs, is unconstitutional. And states enjoined and restrained from failing to issue to plaintiffs these three plaintiffs new driver's license with female sex designations upon application. That doesn't say deadly about the baseline rule. While it's true that it was an as-applied ruling, the court's reasoning addressed the surgery requirement, which is what is challenged here, and said that it was unconstitutional. The state of Alabama now says, for example, the state of Alabama comes in and says, OK, you don't have to hit us but once. We're repealing Order 36. It's gone. Next time somebody comes in, wants to change MDAF, say no, sorry. We had a way you could do that, but you can't. It's gone. Judge Thompson said it was unconstitutional and was applied to three people. We've rescinded it. Well, if I could just respond to that with a couple of quick points. So first, Judge Thompson specifically ordered that they must have female sex designations on their license. Second, if Judge Thompson didn't respond to this so-called baseline rule, that's because it was not asserted in any way before the district court. There was no evidence about it on the record, wasn't in the briefs, wasn't in the oral argument. That is brand new on appeal. And third, if... Counsel, the sex reassignment surgery order doesn't make any sense unless there's a baseline rule that you can't do it otherwise. That's the odd thing about this case. If they were using their defaults for all other information on a license, they would people's disclosure when they said, look, this information is not accurate. This is a valid information now. And then they were left out. You're arguing... Counsel, you're arguing there is a baseline rule. That's what you're arguing. And you're right. There is a baseline rule, apparently, otherwise the accommodation in Rule 36 makes no sense. And what I'm saying to you, this judgment is odd because of what you view as the source of the problem. And I think what impacts your clients is the baseline rule, which is they can't just go in and say, identify as a woman, change the M to an F. If there were such a rule, and such a rule exists in a couple of states for birth certificates, though not driver's licenses, every federal district court to look, or every federal court at all, to look at such a rule has said that that rule also violates the Equal Protection Clause because it's keeping transgender people from getting something that anybody else can get, and because it is treating that information, that sex-based information, differently from all other information. Counsel, I'm talking... Counsel, you missed the point. I'm talking about the judgment in this case. It seems like an odd judgment. It is not because what the state did here, it has to make some decision when people come and say, we want to change our sex. And so what it said, the only information we have in the record, is in 2012, it said, we're going to require you to get surgery, and we think that means changing your genitals. They had no reason to do that other than the state birth certificate rule. That's it. That's not what the testimony was that change was made in 2012. There was no testimony that we changed in 2012, or we announced this rule in 2012, to require the surgery. The testimony... There had to be... There has to... Let's don't take up everybody else's time. I'm just telling you, this is an odd judgment. The state is left with the same baseline rule that you posit if it wants to enforce it, May I wrap up, or I should... You may. Yes. Thank you. What the appellees want here, to quote U.S. vs. Virginia, is equal opportunity to aspire, achieve, participate in, and contribute to society based on their individual talents and capacities. The state has not met its burden to justify its sex-based decision to withhold a license that would allow them to live their lives according to their conscience and free from fear of their physical safety any time they go to a job, a drugstore, a bank, a bar, or a polling place. Thank you. Thank you. Rebuttal. Thank you, Your Honors. Judge Carnes, I do think you hit on something very key, the oddness of this court judgment, because the rule was no one could change sex. And then Policy Order 63 comes along and says some people can change sex. And the district court says Policy Order 63 is unconstitutional, therefore, change sex on plaintiff's licenses. It's an absolute non sequitur. I think it points out problems that are fundamental to the plaintiff's claims. With regard to the evidence of the baseline rule, I mean, there's evidence in the record that in the 2000s, that's when we first began allowing anyone to change their sex. There's nothing to suggest that sex was ever treated like hair color or weight. And that's for good reason, because sex, like date of birth and like name at birth, is on a birth certificate. You don't get to self-report your name and have the state just take you at face value. You don't get to self-report your date of birth and have the state take you at face value. And we've always required sex also be on some sort of document that you provide to the state when you get the driver's license. Now I think Policy Order 63 might be discrimination based on transgender status if it looked a little different. I think if Policy Order 63 said that anyone can change their sex for any reason, except for transgender persons, they have to go through the surgery, well, that would be discrimination on transgender status. That's not what we have here. It is agnostic as to cisgender or transgender status or male or female. Touching on Glenn v. Brumby briefly, which came up during my friend's argument, Judge Carnes, you're right, that case is different because of intent. I think it's also different for the reasons we were pointing out, that what Glenn was seeking was not a different sex-based classification, like the plaintiffs are seeking in this case. Instead, Glenn was seeking a rule that sex should not be relevant at all when it comes to how people are going to dress at the office or how they are going to present. That's very different from what we have here, where a sex-based classification is still presupposed in plaintiff's challenge and in the relief that they seek. They just seek to get a different definition. They think that some people get this benefit of female on their license. They're fine with that. They just think that other people should also get that benefit as well. That's an under-inclusiveness challenge, no different than Mr. Louiera's challenge saying some people get the benefit of being deemed Hispanic in New York. The federal government, for that matter, would deem Spanish people as Hispanic, but New York does not deem Spanish people Hispanic, therefore, this violates equal protection. Second Circuit said no to this on a rational basis. That analysis should apply here as well. Finally, to conclude, plaintiffs do not challenge the validity of our decision to include sex on driver's licenses. They just don't like our definition. The Constitution does not demand a perfect definition, much less one pressed by the plaintiffs in this case, whatever that definition might be. Accordingly, the court should reverse the judgment below and render judgment in favor of appellants. Thank you. Thank you. Our final case of the day will be no.